## IN THE UNITED STATES FEDERAL COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **COREY SHAW** ) | Case No. |
| ) | |
| *Plaintiff,* ) | _____ |
| ) | |
| *v.* ) | |
| ) | |
| **RALEIGH POLICE DEPARTMENT** ) | |
| ) | **COMPLAINT** |
| **SHAWN THOMPSON**, individually ) | |
| and in his official capacity as Officer of ) | |
| Raleigh Police Department, ) | **JURY DEMAND** |
| ) | |
| **CITY OF RALEIGH**, ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

The Plaintiff, by and through undersigned counsel, complains of the Defendants as follows:

### JURISDICTION AND VENUE

1.      Plaintiff brings this action under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution.

2.      This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 28 U.S.C. § 1367(a).

3.      Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Eastern District of North Carolina, the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

4.      This Court is authorized to grant the Plaintiffs' prayer for relief regarding costs, including reasonable attorney's fees, under 42 U.S.C. § 1988.

### JURY DEMAND

1

5.      Pursuant to the Seventh Amendment of the United States Constitution, the Plaintiffs hereby request a jury trial on all issues and claims set forth in this Complaint.

## FACTS

6.      On August 2, 2019, Raleigh Police Officer Shawn Thompson ("Defendant Thompson") was on patrol operating an unmarked police vehicle along with Raleigh Officers Perrin and Twiddy.

7.      The officers were traveling eastbound on New Bern Avenue in Raleigh, City of Raleigh, within their jurisdiction.

8.      Officer Thompson was a duly sworn officer at the time.

9.      As Defendant Thompson waited at a red light in the left-hand turn lane on New Bern Avenue, waiting to turn left, he saw Plaintiff Corey Shaw sitting in a vehicle through his passenger window to his right. A passenger in Shaw's car appeared to be smoking something. Defendant Thompson saw the passenger blow smoke out of the passenger side window.

10.     Based on this observation, and what he claimed to be the "odor of marijuana" (despite sitting in an enclosed adjacent car in the August heat of downtown Raleigh), Defendant Thompson decided to follow Shaw's car on New Bern Avenue after the light turned green.

11.     While Defendant Thompson followed Shaw's car, Shaw operated his car in a safe and lawful manner at all times.

12.     Based on all observations noted above Defendant Thompson initiated a traffic stop after Plaintiff's vehicle made a left turn onto New Hope Road by activating his blue lights and siren.

13.     Plaintiff complied with the traffic stop by pulling into an Auto Zone parking lot, and Defendant Thompson asked Plaintiff to get out of his car and walk to the rear end of the vehicle.

14.     Defendant Thompson questioned Plaintiff at the rear of the vehicle about whether Plaintiff or passenger Robert Banks were in possession of "weed."

15.     Defendant Thompson's body-worn camera was running during the encounter. The dialogue between Thompson, Plaintiff, and Banks is audible, and at no time during the video do Plaintiff or Banks make any admission to possessing or smoking marijuana.

16.     The Passenger Robert Banks, who was the smoking, states approximately six times on camera that he was smoking "CBD," which the court recognizes as the short-hand name for hemp, a substance which is legal to possess in this State.

17.     Defendant Thompson's written report stated that Banks "admitted to being in possession of marijuana and "…passenger admitted to possessing marijuana." The video shows otherwise, and a North Carolina Superior Court found Defendant Thompson's statements to be untrue.

18.     Defendant Thompson's report further stated that Shaw "advised it was stupid that the passenger and he were smoking marijuana like that." The video shows otherwise, and the same Court found this statement to be untrue.

19.     At one point Officer Twiddy presented Defendant Thompson with a black cannister containing a plastic baggie or wrapping which Twiddy had found with passenger Robert Banks. What appeared to be a white label was affixed to the cannister. When Twiddy presented the cannister to Defendant Thompson, Thompson momentarily glanced at the cannister and stated, "that's weed, man." Thompson did not examine the label on the cannister.

3

20.    Legal hemp products are sold in this state in mainstream supermarkets and grocery stores in containers with labels, but no examination was made of that label and the cannister was not preserved by the officers. No one was charged with possession of marijuana or possession of drug paraphernalia based on the stop and incidents described herein.

21.    Defendant Thompson testified that the substance inside appeared to be marijuana and smelled like marijuana, and he concluded that the substance was marijuana based solely on those observations and what he characterized as the smell of marijuana.

22.    Defendant Thompson conducted a search of the vehicle based solely on the odor and appearance of "marijuana."

23.    During the search of the vehicle Defendant Thompson found the glove compartment to be locked. Defendant Thompson's report did not indicate that after the vehicle was stopped that the driver attempted to put something in the glove box or locked the glove box.

24.    Defendant Thompson could not open the glove box until he searched the Plaintiff finding the car keys and ultimately searching the glove box.

25.    As a result of his search of the vehicle, Defendant Thompson found a Smith and Wesson firearm in the glove compartment and arrested Plaintiff for Possession of a firearm by a Felon.

26.    The North Carolina General Assembly passed the Industrial Hemp Act in 2015. The possession of hemp products in legal in this state.

27.    CBD, Hemp, and Marijuana products are all made from the cannabis sativa species, and they are indistinguishable from one another by sight and smell.

28.    There is currently no field test which may distinguish CBD or hemp products from marijuana.

4

29.     Although prior cases have permitted the warrantless searches of automobiles based on an odor of marijuana, the Court found that Defendant Thompson was determined to search the automobile in spite of reasonable indicia that the passengers possessed only hemp, and further had no other indications of possession of an illegal substance, nor indication of reasonable suspicion that criminal activity was afoot, or probable cause to believe the same.

30.     Defendant Thompson attributed statements to the occupants in his report which the Court found to be untrue and failed to preserve a labeled cannister which might have undercut an assertion that the substance was illegal.

31.     There was no evidence from the video that either Plaintiff or his passenger ever gave consent to search the car, and the court found that no consent was either sought or given.

32.     The court found that there was no evidence that the Plaintiff gave consent to search his vehicle or that Defendant Thompson obtained a warrant.

33.     Defendant Thompson also did not have probable cause to search the Plaintiff's vehicle because he ignored reasonable indications that the substance in possession by Plaintiff was hemp and included statements in his report which the Court found to be untrue based on credible evidence presented at a hearing.

34.     Because of this, the court found that Defendant Thompson did not have probable cause to search Plaintiff's vehicle.

35.     The court found that Defendant Thompson's search of Plaintiff's vehicle violated the Fourth Amendment of the Constitution.

36.     The evidence of the firearm resulting from the search was fruit of the poisonous tree and was suppressed from evidence.

## CAUSES OF ACTION

**COUNT I:  Fourth Amendment to the U.S. Constitution, via 42 U.S.C. § 1983**

37.     Plaintiff incorporates above paragraphs 1 through 36 by reference as if fully set forth herein

38.     The Raleigh Police Department operates under the supervision and control of the City of Raleigh.  Officer Thompson is a police officer for the City of Raleigh.  The actions of Officer Thompson are and were at all material times the actions of both the City of Raleigh and the defendant Raleigh Police Department and reflected the policies and procedures of these defendants.

39.     Defendants know of and enforce the policies and practices described above.

40.     Defendants knew or should have known that the circumstances leading to the discovery of the firearm was in violation of the Fourth Amendment yet proceeded to search the Plaintiff's vehicle regardless.

41.     The investigation conducted by the defendants and their actions taken theron were taken in bad faith, or, in the alternative, negligently, and the plaintiff was damaged by reason thereof in at least the following respects:

     a.  Loss of personal freedom;

     b.  Payments necessary for bond and expenses of defense, including attorney's fees;

     c.  Pain and suffering, both physical and emotional; and

     d.  Loss of reputation in the community of Raleigh and throughout City of Raleigh, North Carolina.

42.     The wrongful acts of the defendants complained of herein were undertaken maliciously and include, without limitation, the following:

a.   Intentionally causing the arrest of the plaintiff when the defendants knew or should have known there were no grounds nor probable cause for arrest;

b.   The failure of the defendants to take into account facts which they knew cleared the plaintiff;

c.   The intent of the defendants from the beginning of their investigation to charge plaintiff with a crime;

d.   The failure of the defendants City of Raleigh and Raleigh Police Department to adequately train the officers of the Raleigh Police Department in investigative techniques and procedures;

e.   Preparation of groundless reports and affidavits in order to obtain an arrest warrant against the plaintiff; and

f.   The procurement of groundless charges against the plaintiff based upon incomplete, unsupported evidence which the defendants knew or should have known was false, distorted, or fabricated.

43.   Plaintiff has been compelled to employ the undersigned attorneys to represent him in this matter and is entitled to recover a reasonable attorneys' fee for services of his attorney's herein.

44.   Upon information and belief, the City of Raleigh has waived sovereign immunity by obtaining a general liability insurance policy.

## COUNT II: N.C. Constitution Article 1, Section 19

45.   Plaintiff incorporates paragraphs 1 through 44 by reference as if fully set forth herein.

46.     Under the North Carolina Constitution, "[n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, in in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. Art I, Section 19.

47.     Plaintiff's rights under Article 1, Section 19 of the North Carolina Constitution were violated in the following ways:

    a.   Defendant Thompson in his official capacity, without probable cause or consent, searched Plaintiff's vehicle.

    b.   Defendant Thompson in his official capacity, provided false information on a police report.

    c.   Defendant Thompson in his official capacity failed to maintain a proper chain of custody for exculpatory evidence.

    d.   Defendant Thompson in his official capacity and without probable cause, placed Plaintiff under arrest based on his discovery of a firearm located in a locked glove compartment in Plaintiff's vehicle during the unlawful search.

    e.   Defendant Thompson acted with malice when he provided false information on the police report.

48.     As a result of Defendant Thompson's conduct in his official capacity, Plaintiff was damaged as provided above.  Additionally, Plaintiff was forced to wait for three years to clear his name.

49.     There are no adequate state law remedies available to Plaintiff against Defendant Thompson in his official capacity.

## COUNT III: TRESPASS TO CHATTEL- DEFENDANT THOMPSON INDIVIDUALLY

50.     Plaintiff incorporates above-paragraphs 1 through 49 by reference as if fully set forth herein.

51.     On the date of the traffic stop, Plaintiff was in lawful possession of the vehicle which was the subject of the traffic stop.

52.     Defendant Thompson interfered with Plaintiff's rights to the vehicle when he prolonged the seizure of Defendant and his property without probable cause.

53.     Defendant Thompson subsequently interfered with Plaintiff's rights to the vehicle when he removed the keys from the ignition and then used those keys to unlock the glove compartment within said vehicle to perform the search.

54.     At the time Defendant Thompson's seizure of Plaintiff extended beyond a reasonable stop, he had no lawful basis to prolong the traffic stop.

55.     At the time Defendant Thompson searched Plaintiff's vehicle, he had no probable cause to search, and therefore had no lawful basis to interfere with Plaintiff's vehicle.

**COUNT IV: FALSE IMPRISONMENT- DEFENDANT THOMPSON INDIVIDUALLY**

56.     Plaintiff incorporates above paragraphs 1 through 55 by reference as if fully set forth herein.

57.     Defendant Thompson intentionally and unlawfully detained Plaintiff against his will in that he ordered Plaintiff out of the vehicle, searched Plaintiff for weapons, ordered Plaintiff to stand in a particular place surrounded by other officers; placed Plaintiff in handcuffs; and ultimately arrested Plaintiff pursuant to an unlawful search.

58.     Defendant Thompson further contributed to Plaintiff's unlawful arrest by making demonstrably false statements on the police report describing the basis of his search and Plaintiff's arrest.

59.     Defendant Thompson did not have probable cause to search Plaintiff's vehicle, and accordingly, could not have probable cause to arrest Plaintiff.

## COUNT III:  *MONELL v. DEP'T OF SOCIAL SERVS*, 436 U.S. 658 (1977)-
## DEFENDANTS CITY OF RALEIGH AND RALEIGH POLICE DEPARTMENT

60.     Plaintiff incorporates above paragraphs 1 through 59 by reference as if fully set forth herein.

61.     The Defendant City of Raleigh, with deliberate indifference, maintained a policy, custom, or pattern and practice of promoting, facilitating, and condoning improper, illegal, and unconstitutional techniques implemented by Defendant Raleigh Police Department and its staff, specifically promoting unconstitutional searches and seizures related to marijuana arrests made solely on the basis of sight or smell of what officers believed to be marijuana.

62.     It would have been plainly obvious to a reasonable policymaker that such policies, customs, or patterns and practices would lead to violations of the constitutional rights of individuals that have been stopped or investigated by the Raleigh Police Department in City of Raleigh, North Carolina.

63.     The City of Raleigh's policies, customs, or patterns and practices lead to violations of the constitutional rights of Plaintiff during a stop and investigation by the Raleigh Police Department and Raleigh Police Department's staff and agents.

64.     The wrongful acts and omissions that caused the unconstitutional search and seizure of the Plaintiff were carried out pursuant to Defendant City of Raleigh's policies, customs, patterns, and/or practices.

65.     Defendants City of Raleigh and the Raleigh Police Department, by failing to examine its policies regarding traffic stops involving hemp/CBD and marijuana and failing to

properly train its officers regarding probable cause based on the sight or smell of what the officer perceives to be marijuana directly and proximately caused Plaintiff to be subjected to an unconstitutional search and seizure which violates all standard of decency and constitutes deliberate indifference to the Constitution of the United States.

66.    At all times, Defendant City of Raleigh knew or should have known its conduct was in violation of the Plaintiffs' constitutional rights.

67.    That Plaintiff has suffered damages as a direct and foreseeable result of Defendant's deliberate indifference in excess of $100,000 an amount to be determined at trial.

## PUNITIVE DAMAGES

68.    Plaintiff incorporates the above paragraphs 1 through 67 by reference as if fully set forth herein.

69.    A factfinder may award punitive damages if the Defendants' conduct "was malicious, oppressive or in reckless disregard of the Plaintiff's rights.

70.    Conduct is in reckless disregard of the Plaintiff's rights if, under the circumstances, it reflects complete indifference to the Plaintiff's safety or rights, or if the Defendant acts in the face of a perceived risk that its actions will violate the Plaintiff's rights under both state and federal law.

71.    An act or omission is oppressive if the Defendant injures or damages or otherwise violates the rights of the Plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the Plaintiff.

72.    Defendants' actions show a complete indifference to Plaintiff's Fourth amendment rights under the Constitution of the United States.  Defendants willfully or recklessly subjected

11

Plaintiff to an unconstitutional search and seizure depriving him of his liberty and property in violation of the Fourth amendment for which all Defendants are liable and for which Plaintiff should be awarded compensatory and punitive damages in an amount of Three times the amount of damages determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays the Court for the following relief:

1.    That this Court award compensatory damages in an amount greater than one million and 00/100 dollars ($1,000,000.00), to be shown at trial;

2.    That this Court award punitive damages in an amount greater than one million and 00/100 dollars ($1,000,000.00), to be shown at trial.

3.    That this Court award Plaintiff's pre-judgment and post-judgment interest and recovery of costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 1920;

4.    That the Plaintiff has a trial by jury on all issues and claims set forth in this Complaint;

5.    That this Court retain jurisdiction of this matter for the purpose of enforcing orders of this Court; and

6.    That this Court grant such other and further relief as this Court deems equitable and just under the circumstances.

Respectfully submitted this 23rd day of November 2022.

/s/ John W. Moss
John W. Moss
Dobson Law Firm, PLLC
1130 Situs Court, Suite 240
Raleigh, N.C. 27606
Telephone: (919) 591-2240
Fax: (919) 591-2247
Email: jmoss@dobsonlawnc.com
N.C. State Bar: 54932
*Attorney for the Plaintiff*