IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-476-D

| | |
|---|---|
| COREY SHAW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| RALEIGH POLICE DEPARTMENT, | ) |
| SHAWN THOMPSON, individually | ) |
| and in his official capacity, and | ) |
| CITY OF RALEIGH, | ) |
| | ) |
| Defendants. | ) |

On November 23, 2022, Corey Shaw ("Shaw" or "plaintiff") filed a complaint in this court against the Raleigh Police Department ("RPD"), Officer Shawn Thompson ("Thompson"), in his individual and official capacity, and the City of Raleigh ("Raleigh") (collectively, "defendants") alleging a violation of the Fourth Amendment to the Constitution of the United States, a violation of Article 1, Section 19 of the North Carolina Constitution, trespass to chattel (against Thompson only), false imprisonment (against Thompson only), and requesting compensatory and punitive damages [D.E. 1]. On February 3, 2023, Thompson moved to dismiss the complaint for failure to state a claim upon which relief can be granted [D.E. 18]. See Fed. R. Civ. P. 12(b)(6).

On February 24, 2023, Shaw filed an amended complaint, alleging the same causes of action as in the initial complaint and adding a section on malicious prosecution. See Am. Compl. [D.E. 20].[1] On March 6, 2023, the RPD moved to dismiss the amended complaint for failure to state a

---

[1] In light of the amended complaint, the court dismisses as moot Thompson's motion to dismiss the complaint.

claim upon which relief can be granted [D.E. 21]. See Fed. R. Civ. P. 12(b)(6). Shaw did not respond to the RPD's motion to dismiss. The same day, Raleigh and Thompson in his official capacity moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted [D.E. 23]. See Fed. R. Civ. P. 12(b)(6). On April 10, 2023, Shaw responded in opposition [D.E. 30]. On May 1, 2023, Raleigh and Thompson in his official capacity replied [D.E. 32].

On April 10, 2023, Thompson in his individual capacity moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted [D.E. 27]. See Fed. R. Civ. P. 12(b)(6). Shaw did not respond to Thompson's motion to dismiss in his individual capacity. As explained below, the court grants defendants' motions to dismiss and dismisses without prejudice Shaw's amended complaint.

I.

On August 2, 2019, RPD Officers Thompson, Perrin, and Twiddy, were patrolling in an unmarked police vehicle on New Bern Avenue. See Am. Compl. ¶¶ 6–7.[2] While waiting at a red light, Thompson saw Shaw in a vehicle on his right. See id. at ¶ 9. Thompson thought he saw the passenger in Shaw's car, Robert Banks ("Banks") smoking something. See id. Based on this observation, and an "odor of marijuana," Thompson began to follow Shaw's car. See id. at ¶ 10. Shaw was driving safely and obeying all applicable traffic laws at the time. See id. at ¶ 11.

Thompson initiated a traffic stop once Shaw turned onto New Hope Road. See id. at ¶ 12. Thompson asked Shaw to exit the vehicle and began questioning Shaw about whether Shaw or Banks possessed marijuana. See id. at ¶ 14. During the questioning, Banks stated multiple times

---

[2] Shaw does not name Officers Perrin and Twiddy as defendants.

2

Case 5:22-cv-00476-D-BM   Document 39   Filed 06/08/23   Page 2 of 12

that he was smoking CBD. See id. at ¶ 16. Unlike marijuana, CBD is legal in North Carolina. See id. at ¶¶ 16, 26. At no point during the stop did Shaw or Banks admit to possessing or smoking marijuana. See id. at ¶ 15.

In his written arrest report, Thompson stated that Banks admitted to possessing marijuana and that Shaw admitted that it "was stupid that the passenger and he were smoking marijuana like that." Id. at ¶¶ 17–18. Thompson also alleged that he found a black cannister with a plastic bag inside containing marijuana without fully examining the cannister. See id. at ¶ 19.

Thompson and the other officers then searched the vehicle based solely on the smell and appearance of marijuana. See id. at ¶ 22. The vehicle's glove box was locked, and Thompson used Shaw's keys to open it. See id. at ¶¶ 23–24. Thompson found a Smith and Wesson firearm in the glovebox. See id. at ¶ 25. Thompson then arrested Shaw for possession of a firearm by a felon. See id. The RPD did not charge Banks or Shaw with a controlled substance offense. See id. at ¶ 20.

A Wake County Superior Court judge suppressed evidence from the traffic stop, finding that Thompson did not have probable cause to search Shaw's vehicle. See id. at ¶¶ 32, 35. The court found that Thompson did not have a warrant and that Shaw did not consent to the search. See id. at ¶¶ 31–32. The court also found that Thompson "ignored reasonable indications that the substance in possession by Plaintiff was hemp and included statements in his report which the Court found to be untrue based on credible evidence presented at a hearing." Id. at ¶ 33. Accordingly, the search violated the Fourth Amendment, and Shaw was not convicted of possession of a firearm by a felon. See id. at ¶¶ 32, 35, 71.[3]

---

[3] The amended complaint does not state how the prosecution ended (i.e., dismissal, acquittal, or some other resolution). Rather it simply states that the "North Carolina prosecution in Wake County Case Number 19CRS214262 ended in plaintiff's favor." Id. at ¶ 71.

3

II.

Shaw's amended complaint concerns the traffic stop on August 2, 2019, and contains (1) a claim under the Fourth Amendment and 42 U.S.C. § 1983; (2) a claim under Article I, section 19, of the North Carolina Constitution; (3) a trespass to chattel claim against Thompson individually; (4) a false imprisonment claim against Thompson individually; (5) a Monell [4] claim against Raleigh and the RPD; and (6) a malicious prosecution claim. See Am. Compl. ¶¶ 37–71. Shaw seeks compensatory and punitive damages of more than $1,000,000.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into

---

[4] Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–94 (1978).

4

"plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

North Carolina law applies to some claims in this case. Accordingly, with respect to those claims, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation and citation omitted). In doing so, this court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999). Moreover, in predicting how the highest court of a state would address an issue that it has not yet resolved, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court

5

would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted).

A.

The RPD moves to dismiss the amended compliant and argues that the RPD lacks capacity to be sued. See [D.E. 22] 3. "[A] governmental entity may only be sued if the law of the state in which the court is located permits it." Smith v. Munday, 848 F.3d 248, 256 (4th Cir. 2017) (citing cases); Fed. R. Civ. P. 17(b)(3). Under North Carolina law, "police departments cannot be sued as entities." Id.; see Ragland v. Doe, 811 F. App'x 177, 177 (4th Cir. 2020) (per curiam) (unpublished); Parker v. Bladen Cnty., 583 F. Supp. 2d 736, 740 (E.D.N.C. 2008); Moore v. City of Asheville, 290 F. Supp. 2d 664, 673 (W.D.N.C. 2003), aff'd, 396 F.3d 385 (4th Cir. 2005). Therefore, the RPD lacks capacity to be sued under North Carolina law, and the court grants the RPD's motion to dismiss.

Shaw also failed to respond to the RPD's motion to dismiss and Thompson's motion to dismiss in his individual capacity. Courts within the Fourth Circuit "agree that failing to respond to an argument constitutes an abandonment of a claim." Sawyers v. United Parcel Serv., Inc., No. 1:18CV1037, 2019 WL 4305771, at *3 (M.D.N.C. Sept. 11, 2019) (unpublished); see, e.g., Morgan v. Ellis, No. 3:22-CV-3, 2023 WL 3361200, at *3 (W.D.N.C. May 10, 2023) (unpublished); Ferdinand-Davenport v. Children's Guild, 742 F. Supp. 2d 772, 783 (D. Md. 2010). Thus, Shaw has abandoned his claims against the RPD and Thompson in his individual capacity. Accordingly, the court dismisses Shaw's claims against the RPD and Thompson in his individual capacity.

B.

Raleigh moves to dismiss the amended complaint and argues that the three-year statute of limitations bars Shaw's claims. See [D.E. 28] 6–8; [D.E. 32] 1–2. Shaw responds that his claims

6

are not time barred and focuses on his malicious prosecution claim. See [D.E. 30] 5–7; cf. McDonough v. Smith, 139 S. Ct. 2149, 2154–55 (2019) (statute of limitations for a fabricated evidence claim under 42 U.S.C. § 1983 does not begin to run until the criminal proceeding against the defendant terminated in defendant's favor).

Initially, the court addresses Shaw's malicious prosecution claim. Unfortunately, it is not clear what Shaw is alleging in his malicious prosecution claim and against whom he is alleging it. See Am. Compl. ¶¶ 68–71. Although Shaw argues in his memorandum in opposition to Raleigh's motion to dismiss that he is alleging a malicious prosecution claim under 42 U.S.C. § 1983 against both Raleigh and Thompson, the amended complaint does not support the argument. Shaw does not mention Raleigh in his malicious prosecution claim. See Am. Compl. ¶¶ 68–71. Rather, Shaw alleges that "Defendant Shawn Thompson instituted a criminal proceeding without probable cause." Id. at ¶ 69. Moreover, Shaw does not allege anything about Raleigh having a policy, custom, pattern, or practice in a way that would impose municipal liability due to malicious prosecution. Cf. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403–05 (1997); Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Monell, 436 U.S. at 690–94; King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469–70 (4th Cir. 2013); Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003); Carter v. Morris, 164 F.3d 215, 218–19 (4th Cir. 1999). Although the amended complaint attempts to make such policy allegations about Shaw's trespass to chattel claim against Thompson individually, see Am. Compl. ¶¶ 60–67, nothing in Shaw's Monell section mentions malicious prosecution.[5] Thus, the amended complaint

---

[5] Adding to the confusion, Shaw's amended complaint includes "Count III: Trespass to Chattel" against "Defendant Thompson Individually" on page 8 of the amended complaint, and also includes a different "Count III: Monell v. Dep't of Social Servs., 436 U.S. 658 (1977) - Defendants City of Raleigh And Raleigh Police Department" on page 10. See Am. Compl. at 8, 10.

7

does not allege a malicious prosecution claim against Raleigh.

Additionally, the amended complaint does not clarify whether Shaw is alleging his malicious prosecution claim under North Carolina law alone or as a 42 U.S.C. § 1983 claim. Accordingly, the court cannot determine whether Shaw alleges this claim against Thompson in his official capacity, individual capacity, or both. This distinction helps not only to identify the proper defendant, but also to analyze the statute of limitations. Because Shaw's discussion of malicious prosecution in his amended complaint does not refer to the North Carolina Constitution or mention 42 U.S.C. § 1983, Shaw may be alleging a states law malicious prosecution claim against Thompson in his individual capacity. However, because Shaw has abandoned his claims against Thompson in his individual capacity, he also abandoned such a malicious prosecution claim against Thompson.

Alternatively, even if Shaw's amended complaint contains a malicious prosecution claim against both Raleigh and Thompson under 42 U.S.C. § 1983 or state law alone, Shaw has failed to plausibly allege malicious prosecution against either defendant. Under North Carolina law, "[t]o establish malicious prosecution, a plaintiff must show that the defendant (1) initiated or participated in the earlier proceeding, (2) did so maliciously, (3) without probable cause, and (4) the earlier proceeding ended in favor of the plaintiff." Turner v. Thomas, 369 N.C. 419, 425, 794 S.E.2d 439, 444 (2016); see N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc., 366 N.C. 505, 512, 742 S.E.2d 781, 786–87 (2013). In a malicious prosecution claim, probable cause means "the existence of such facts and circumstances, known to the defendant at the time, as would induce a reasonable man to commence a prosecution." Turner, 369 N.C. at 425, 794 S.E.2d at 444 (cleaned up); see Best v. Duke Univ., 337 N.C. 742, 750, 448 S.E.2d 506, 510 (1994); Cook v. Lanier, 267 N.C. 166, 170, 147 S.E.2d 910, 914 (1966). The fact that the criminal proceeding ultimately ended in Shaw's favor does not "automatically negate the existence of probable cause at the time

8

prosecution was commenced" or establish malice. Turner, 369 N.C. at 425, 794 S.E.2d at 445.

"A plaintiff alleging malicious or intentional acts by a government official faces a high bar." Fox v. City of Greensboro, 279 N.C. App. 301, 316, 866 S.E.2d 270, 284 (2021). "[T]he malice element may be satisfied by a showing of either actual or implied malice." Kirschbaum v. McLaurin Parking Co., 188 N.C. App. 782, 789, 656 S.E.2d 683, 688 (2008) (citation omitted). Malice requires that the defendant "was motivated by personal spite and a desire for revenge" or that the defendant acted with "reckless and wanton disregard" for the plaintiff's rights. Fox, 279 N.C. App. at 316, 866 S.E.2d at 284 (cleaned up).

Shaw alleges that Thompson claims to have smelled and identified marijuana in Shaw and Banks's possession. See id. at Am. Compl. ¶¶ 14, 16–18. Shaw admits that Banks told Thompson "approximately six times" on camera that he was smoking CBD, and does not deny that CBD was in the car during the traffic stop. See id. at ¶ 16. Thompson did not believe Banks's claim that the substance was CBD and wrote in his arrest report that Banks "admitted to possessing marijuana." Id. at ¶ 17.

But the amended complaint also explains that "CBD, Hemp, and Marijuana products are all made from the cannabis sativa species, and they are indistinguishable from one another by sight and smell." Id. at ¶ 27 (emphasis added). Moreover, "[t]here is currently no field test which may distinguish CBD or hemp products from marijuana." Id. at ¶ 28. Furthermore, Shaw admits that the legality of Thompson's search had precedential support. See id. at ¶ 29 ("prior cases have permitted the warrantless searches of automobiles based on an odor of marijuana").[6]

---

[6] The amended complaint notes that the state trial court's decision to suppress the fruits of the search was based, in part, on Thompson's failure to preserve the cannister which Thompson claimed contained marijuana. See id. at ¶ 30. Although Shaw alleges the state trial court did not believe Shaw or Banks had marijuana, Shaw does not allege that the court found Thompson

9

With these facts giving context to the August 2, 2019 traffic stop, the amended complaint does not plausibly allege that Thompson was intentionally spiteful or reckless when he thought he smelled marijuana and assumed Banks admitted to possessing marijuana. The amended complaint states that CBD and marijuana are identical in smell and appearance, meaning it was reasonable for Thompson to believe that the CBD odor and any CBD found in the canister was, in fact, marijuana. See id. at ¶ 27. Thompson also could not confirm Banks's statement that Banks was smoking CBD because, as the amended complaint alleges, there is no field test that could have chemically proven the substance was CBD and not marijuana. See id. at ¶ 28. Moreover, to the extent Shaw argues Thompson was reckless for initiating the stop on odor alone, Shaw admits that such stops were not clearly illegal on August 2, 2019. Id. at ¶ 29. Although Shaw's amended complaint plausibly alleges that Thompson made a mistake in assuming the CBD was marijuana and assuming that Banks's admission of having CBD was an admission of possessing marijuana, Shaw does not plausibly allege that Thompson made these mistakes out of spite or was otherwise acted with "reckless and wanton disregard" of Shaw's rights. Fox, 279 N.C. App. at 316, 866 S.E.2d at 284.

In light of the facts alleged in the amended complaint, Shaw's bare, conclusory allegation that Thompson "acted with malice" and a "reckless disregard" to Shaw's rights is implausible. Am. Compl. ¶ 70. Accordingly, the court dismisses Shaw's malicious prosecution claim.[7]

As for the remainder of Shaw's claims, defendants argue that they arose from the August 2, 2019 traffic stop, accrued on that date, and are time barred by the applicable three-year statute of limitations. A party may raise an affirmative defense based on the statute of limitations under

---

intentionally lied in his arrest report or otherwise maliciously misled the court.

[7] In light of this conclusion, the court does not address the statute of limitations concerning Shaw's malicious prosecution claim. Cf. McDonough, 139 S. Ct. at 2154–55.

10

Federal Rule of Civil Procedure 12(b)(6) rather than Rule 8(c) if all facts necessary to the affirmative defense "clearly appear[ ] on the face of the complaint." Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993); see Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc).

"The limitations period for a [section] 1983 claim begins to run when the plaintiff has a complete and present cause of action—in other words, when it could have file[d] suit and obtain[ed] relief." Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth., 807 F.3d 62, 67 (4th Cir. 2015) (quotation omitted); see Wallace v. Kato, 549 U.S. 384, 388 (2007). Section 1983 claims "arising in North Carolina are limited by the three-year period for personal injury actions set forth in [N.C. Gen.Stat.] § 1–52(5)." Tommy Davis Const., Inc., 807 F.3d at 67 (quoation omitted); see Nat'l Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1162 n. 2 (4th Cir. 1991). Shaw's claims under Article 1 section 19 of the North Carolina Constitution also are subject to a three-year statute of limitations. See Morley v. N.C. Dep't of Health & Hum. Servs./Broughton Hosp., 171 F. Supp. 2d 585, 592 (W.D.N.C. 2001) (collecting cases).

Putting aside Shaw's malicious prosecution claim, Shaw's other claims arising from the traffic stop accrued on August 2, 2019. The three-year statute of limitations period expired on August 2, 2022. Shaw filed his complaint in this action on November 23, 2022. See [D.E. 1]. Thus, the remainder of Shaw's claims are untimely, and the court dismisses them as time barred.

III.

In sum, the court DISMISSES AS MOOT Thompson's first motion to dismiss [D.E. 18], GRANTS defendants' motions to dismiss [D.E. 21, 23, 27], and DISMISSES WITHOUT PREJUDICE plaintiff's amended complaint [D.E. 20].

11

SO ORDERED. This  8  day of June, 2023.

                                                JAMES C. DEVER III
                                                United States District Judge

12

Case 5:22-cv-00476-D-BM   Document 39   Filed 06/08/23   Page 12 of 12